IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 13, 2002


## CARROL PRESTON FLANNARY v. JOYCE ANN FLANNARY


**Appeal from the Circuit Court for Hawkins County**
**No. 10161     Ben K. Wexler, Judge**


### FILED JANUARY 16, 2003

### No. E2002-00869-COA-R3-CV

--------------------------------


Carrol Preston Flannary ("Husband") and Joyce Ann Flannary ("Wife") were divorced in 2001. As part of the divorce, the Trial Court entered an order awarding Wife, *inter alia,* a judgment for one-half of $48,000 determined to be missing from the marital estate; holding Wife's interest in real property deeded to Wife and her siblings by their mother constituted separate property of Wife; and dividing the parties' interest in their residential property with one-half the value going to each party. Husband appeals. We vacate the award to Wife of $24,000, affirm as modified, and remand.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed as Modified; Case Remanded.**


D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., joined. CHARLES D. SUSANO, JR., J., filed a separate concurring in part and dissenting in part opinion.


James H. Beeler, Kingsport, Tennessee, for the Appellant, Carrol Preston Flannary.

John D. Parker, Kingsport, Tennessee, for the Appellee, Joyce Ann Flannary.

# OPINION

## Background

Husband and Wife were divorced in 2001, after approximately 20 years of marriage. Prior to the marriage, Husband and Wife each owned residential property. After they married, the parties sold their individually owned residential properties and each contributed money toward the purchase of a house. During the marriage, the parties sold the first house they purchased together and purchased and subsequently sold several other houses, each time residing in the newly purchased house. Husband testified he contributed additional pre-marital savings when the parties purchased their second and third houses together. However, Husband testified although he contributed a substantial amount of money toward the purchase of the parties' fourth house, this money did not come from pre-marital assets.

At some point during the marriage, some real property was deeded to Wife and her siblings by their mother. Wife's mother retained a life estate in this property. Wife testified the property included two houses. Wife's sister lives in one of the houses. The other house contains Wife's mother's belongings.[1] Husband and Wife never lived at this property. Wife testified the property was a gift from her mother "[t]hat was to be our inheritance." Wife also testified the houses were dilapidated and had heat and water problems and the property had depreciated in value.

Late in the marriage, Husband became concerned about potential Y2K problems. At some point in 1999, Husband began drawing money out of his savings account and taking it home. Husband took small amounts out on many occasions over the course of several months totaling approximately $48,000.[2] Husband testified he didn't take all of the money out of the account at once because he figured it was "too much to take out." Husband also admitted it didn't make sense to withdraw the money early instead of letting it stay in the bank and draw interest, but he wasn't thinking. When questioned on cross examination, Husband admitted putting the money in a safety deposit box would have been an excellent idea, but he never thought to do that.

Husband took the money home and placed it in his bedroom. Husband and Wife had separate bedrooms. Husband testified he did not hide the money. Husband testified the money was missing when he later went to get it to put it back in the bank. Husband claimed Wife took the money and had admitted to him on several occasions she had the money. Wife vehemently denied these allegations and testified she did not know the cash was in the house until Husband accused her of stealing it. Husband testified he attempted to file a formal police report accusing Wife of stealing the money, but was advised by a police detective "there wasn't no use in doing it" because it was his

---

[1]Wife's mother resides in a nursing home.

[2]Husband produced withdrawal slips as proof the money existed. The withdrawal slips admittedly did not total $48,000. However, Husband testified he brought $48,000 home to protect it from Y2K, and the Trial Court found the amount of the missing money to be $48,000. Neither party questions this finding.

word against hers. On cross examination, Husband admitted four people lived in the house, all of whom had access to the money. He also admitted the house was empty on occasion.

In its Memorandum Opinion, the Trial Court found there was no evidence that could "convict anybody for taking this money. . . ." The Trial Court stated "[a]nything could have happened to [the money]. He could have gotten it and taken it out. She could have gotten it and taken it out. Somebody else could have gotten it and taken it out . . . . neither one of them knows what happened to it." The Trial Court also found Husband had full control of the money from the time it left the bank until he took it home and put it into a drawer.

A Final Judgment of Absolute Divorce was entered on October 22, 2001, in which the Trial Court reserved judgment on several issues including the division of real property. The final divorce decree also allowed one week for the parties to attempt to come to an agreement concerning the division of both real and personal property. On March 12, 2002, the Trial Court entered an Order awarding, as part of the property division, Wife a judgment against Husband for $24,000, representing one-half of the missing money; holding Wife's interest in the property deeded to her and her siblings by their mother constituted separate property; and ordering the parties' residential property sold and the proceeds split equally.

## Discussion

Although not exactly stated as such, Husband raises the following issues on appeal: 1) did the Trial Court err in holding Wife's interest in the real property deeded to Wife and her siblings by their mother to be Wife's separate non-marital property; 2) did the Trial Court err in not treating Husband's interest in the parties' residential property as a separate pre-marital interest; and 3) did the Trial Court err in awarding Wife $24,000, representing one-half of the money determined to be missing. Although Husband's argument links issues one and two, these are two separate issues, and we will deal with each in turn.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether the Trial Court erred in determining Wife's interest in the real property deeded to Wife and her siblings by their mother to be Wife's separate non-marital property. When classifying property, courts must look to Tenn. Code Ann. § 36-4-121, which provides definitions for 'marital property' and 'separate property'. *Davis v. Davis*, No. W2001-01748-COA-R3-CV, 2002 Tenn. App. LEXIS 732, *6 (Tenn. Ct. App. Oct. 16, 2002), *no appl. perm. appeal filed*; Tenn. Code Ann. § 36-4-121(b) (2002). Specifically, the statute states: "Property acquired by a spouse at any time by gift, bequest, devise or descent;" constitutes separate property. Tenn. Code Ann. § 36-4-121(b)(2)(D) (2002). However, separate property can become marital

-3-

property if it is co-mingled with either marital property or the separate property of the other spouse, or if transmutation occurs such that the property is treated in a manner indicating an intent for it to become marital property. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002).

Marital property also includes "any increase in value during the marriage" of separate property if "each party substantially contributed to its preservation and appreciation . . . ." Tenn. Code Ann. § 36-4-121(b)(1)(B) (2002). Substantial contribution is defined to include, but not be limited to, "the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, . . ." Tenn. Code Ann. § 36-4-121(b)(1)(D) (2002).

The property in question was deeded to Wife and her siblings by their mother as a gift. Wife's mother retained a life estate in this property. The evidence in the record is undisputed that this property was neither co-mingled with marital property or Husband's separate property, nor ever treated in any manner indicating an intent for it to become marital property. The property was a gift to Wife and remained her separate property.

Although the parties never resided at the property deeded to Wife and her siblings, Husband appears to argue the real property in question should be classified as marital property because Husband worked outside the home and provided monies toward the parties' support and housing. Husband argues he made a substantial contribution to the preservation and appreciation of the property in question. The Trial Court, however, did not find any increase in the value of the subject property. We therefore, must examine the record to determine if the evidence preponderates in favor of a finding there was any increase in value in the subject property, which increase could have been classified as marital property.

A thorough review indicates the record is devoid of any evidence of an increase in value of this property. Rather, Wife testified the property has declined in value. Husband testified he understood the current appraised value of the property to be $80,000. However, no evidence was presented as to the value of the property when it originally was deeded to Wife and her siblings. As such, we hold the evidence does not preponderate in favor of a finding there was an increase in value of this property. We, therefore, affirm the Trial Court's holding that Wife's entire interest in the property deeded to Wife and her siblings by her mother was Wife's separate non-marital property.

We next discuss whether the Trial Court erred in not recognizing Husband's interest in the parties' residential property as a separate pre-marital interest. Husband's brief appears to argue since the Trial Court recognized Wife's interest in the real property deeded to Wife and her siblings as separate property, the Trial Court also should have recognized as separate property Husband's contributions of pre-marital funds to the parties' residential property. This contention contains two different and unrelated issues. We already have addressed the issue regarding the property deeded to Wife from her mother and will now address whether Husband's contributions of pre-marital funds to the parties' residential property should have been characterized as separate property.

-4-

The Trial Court found the parties co-mingled pre-marital funds to purchase a house, which they later sold. The proceeds from the sale of the house were used to purchase a subsequent house and this scenario was repeated such that over the course of the marriage the parties purchased and sold several houses in which they had lived. The Trial Court found the pre-marital funds each party had contributed had been co-mingled to such an extent it was impossible to trace which monies went to which portion of each subsequent house purchase. As such, the house the parties resided in at the time of the divorce, which was purchased with co-mingled funds during the marriage, constituted marital property. The evidence does not preponderate against the Trial Court's findings. We affirm on this issue.

We next consider whether the Trial Court erred in awarding Wife a judgment against Husband for $24,000, representing one-half of the money determined to be missing. As discussed above, Tenn. Code Ann. § 36-4-121 governs the classification and distribution of property in a divorce. However, as this Court has stated:

> [S]peaking in general terms, property once owned by a spouse, either as separate property or marital property, but not owned by either spouse at the time of divorce, is not subject to classification and division or distribution when the divorce is pronounced. This is because, generally speaking, a court cannot divide and/or distribute what is "not there" – property no longer owned by the parties, individually or jointly, at the time of the divorce.

*Brock v. Brock*, 941 S.W.2d 896, 900 (Tenn. Ct. App. 1996) (footnote omitted); *see* Tenn. Code Ann. § 36-4-121 (2002).

The Trial Court found anything could have happened to the $48,000. Husband, Wife or a third party could have taken the money. The record indicated neither party knew what had happened to the money. The Trial Court found that the evidence was insufficient to determine who actually took the money. As found by the Trial Court, "[a]nything could have happened to [the money]. He could have gotten it and taken it out. She could have gotten it and taken it out. Somebody else could have gotten it and taken it out . . . neither one of them knows what happen to it." Husband testified that the money was not in his possession. So did the Wife. The Trial Court found, as to the money, that "[i]t's apparently gone . . . ." The evidence does not preponderate against the Trial Court's findings. The Trial Court concluded that neither Husband nor Wife satisfied the burden necessary to show that the other had taken this money. We agree with the Trial Court.

The Trial Court never found that Husband had the money. Rather, the Trial Court stated "I don't know what happened to [the money]." In short, the Trial Court found that while it could not tell where the money went, it did find that it was "apparently gone . . . ." Since the money disappeared prior to the divorce, the Trial Court erred in dividing property which was "not there" as neither Husband nor Wife was able to show that the other had taken the money. Therefore, we vacate the portion of the judgment awarding Wife a judgment against Husband for $24,000. Neither

-5-

party is entitled to judgment against the other regarding the missing $48,000. We do not mean to suggest one may avoid distribution of marital assets by dissipating them prior to the court's award. "[O]ne party's dissipation of assets can be considered in formulating a property division that is equitable." *Hulshof v. Hulshof*, No. 01A01-9806-CH-00339, 1999 Tenn. App. LEXIS 653, at *15 (Tenn. Ct. App. Sept. 29, 1999), *no appl. perm. appeal filed*. Tenn. Code Ann. § 36-4-121 specifically requires the court to consider "[t]he contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property,..." in making an equitable distribution. Tenn. Code Ann. § 36-4-121(c)(5) (2002). In the case at hand, the Trial Court made no finding that the $48,000 had been dissipated and this issue was not raised on appeal.

### Conclusion

The portion of the Trial Court's judgment awarding Wife a judgment against Husband for $24,000 is vacated. The judgment is affirmed as modified. This cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed equally against the Appellant, Carrol Preston Flannary, and his surety, and the Appellee, Joyce Ann Flannary.

_____
D. MICHAEL SWINEY, JUDGE